UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X
                                                                  :
R.S., *by and through his parents and next friends*, C.S.         :
and RO.S., and C.S. and RO.S, *individually*; T.W.C., *by*        :
*his parents and next friends*, E.Y. and T.C., and E.Y. and       :
T.C. *individually*; and A.W, *by his parents and next*           :
*friends*, F.S. and N.W., and F.S. and N.W., *individually*,      :
                                                                  :
                    Plaintiffs and Plaintiffs-Intervenors,        :
                                                                  :
                    -v-                                           :
                                                                  :
NEW YORK CITY DEPARTMENT OF EDUCATION,                            :
                                                                  :
                    Defendant.                                    :
                                                                  :
------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:_03/06/2023_

21-cv-10596 (LJL)

OPINION AND ORDER

LEWIS J. LIMAN, United States District Judge:

    Plaintiffs[1] and Plaintiffs-Intervenors,[2] who bring this action pursuant to the Individuals

with Disabilities Education Improvement Act ("IDEA"), 20 U.S.C. § 1401 *et seq*., move,

pursuant to Federal Rule of Civil Procedure 56, for summary judgment.  Dkt. No. 34.  The New

York City Department of Education ("Defendant" or "DOE") cross-moves, pursuant to Federal

Rule of Civil Procedure 56, for summary judgment.  Dkt. No. 38.  Plaintiffs and Plaintiffs-

Intervenors also seek to add another student plaintiff-intervenor as well as his parents to the case.

Dkt. No. 62.

    For the reasons that follow, the motions for summary judgment are denied as moot and

the case is dismissed.  The Court also denies Plaintiffs' and Plaintiffs-Intervenors' request to add

another student plaintiff-intervenor as well as his parents to this case.

--------------------

[1] "Plaintiffs" refers to R.S., by and through his parents and next friends, C.S. and RO.S, and C.S.
and RO.S., individually.
[2] "Plaintiffs-Intervenors" refers to T.W.C., by his parents and next friends E.Y. and T.C., and
E.Y. and T.C., individually and A.W., by his parents and next friends, F.S. and N.W., and F.S.
and N.W. individually

## BACKGROUND

The relevant facts in this action are not in dispute.

## I.      Statutory and Regulatory Background

The IDEA provides for the disbursement of federal funds to states that develop plans to, among other things, provide a free and appropriate public education ("FAPE") to children with disabilities. *See Ventura de Paulino v. New York City Dep't of Educ.*, 959 F.3d 519, 525 (2d Cir. 2020). "The mechanism established by the IDEA to guarantee a FAPE to disabled children is the IEP" or "individualized education program." *Thomason v. Porter*, 2023 WL 1966207, at *5 (S.D.N.Y. Feb. 13, 2023). The provision of a FAPE to a student with a disability requires the school district to develop an IEP "reasonably calculated to enable the child to receive educational benefits." *T.M. ex rel. A.M. v. Cornwall Cent. Sch. Dist.*, 752 F.3d 145, 151 (2d Cir. 2014) (quoting *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cnty. v. Rowley*, 458 U.S. 176, 207 (1982)). In New York, local Committees on Special Education ("CSE"), the members of which are appointed by school boards or the trustees of school districts, are assigned the responsibility for developing appropriate IEPs. *See Gagliardo v. Arlington Cent. Sch. Dist.*, 489 F.3d 105, 107 (2d Cir. 2007). "The IEP, the result of collaborations between parents, educators, and representatives of the school district, 'sets out the child's present educational performance, establishes annual and short-term objectives for improvements in that performance, and describes the specially designed instruction and services that will enable the child to meet those objectives.'" *Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*, 297 F.3d 195, 197 (2d Cir. 2002) (quoting *Honig v. Doe*, 484 U.S. 305, 311 (1988)).

"Concerned that parental input into the creation of the IEP would not be sufficient to safeguard a child's right to a free and appropriate education, Congress also included within the IDEA procedural safeguards that enable parents and students to challenge the local educational

agency's decisions." *Id.*  New York has instituted a two-tier administrative review procedure. *Id.* (citing N.Y. Educ. Law § 4404).  First, parents may obtain review of the IEP by filing a due process complaint which is heard by an impartial hearing officer ("IHO").  N.Y. Educ. Law § 4404(1).  Second, parties aggrieved by the decision of the IHO may appeal to the state review officer ("SRO").  *Id.* § 4404(2).  "The SRO's decision is final[] and concludes the state administrative review."  *Melendez v. New York City Dep't of Educ.*, 420 F. Supp. 3d 107, 113 (S.D.N.Y. 2019) (quoting *Bd. of Educ. of Pawling Cent. Sch. Dist. v. Schutz*, 290 F.3d 476, 481 (2d Cir. 2002)).  "Upon issuance of a final administrative decision, however, a dissatisfied party has the right to bring a civil action in either federal or state court pursuant to the IDEA." *Schutz*, 290 F.3d at 481.

A parent aggrieved by the choice of school reflected in the IEP may unilaterally change their child's placement, without the consent of state or local school officials and "if ultimately successful in the review proceedings, they are permitted to seek retroactive recovery of past tuition expenses."  *Id.*  But a parent does so at his or her own risk.  *Id.*  If the SRO, and court upon review, conclude that the IEP has provided the student a FAPE, the parent will bear the cost of the unilateral placement.

At issue in this case is a provision in the IDEA known as the "pendency" or "stay-put" provision.  *See* 20 U.S.C. § 1415(j).  That provision requires that "during the pendency of any proceedings conducted pursuant to this section . . . the child shall remain in the then-current educational placement of the child . . . ."  *Id.*  The purpose of the provision is "to maintain the educational status quo while the parties' dispute is being resolved" and the stay-put order acts as an automatic preliminary injunction during the pendency of the proceedings.  *T.M. ex rel. A.M.*, 752 F.3d at 152; *see D.C. v. Oliver*, 991 F. Supp. 2d 209, 212 (D.D.C. 2013).  Thus, regardless

3

whether the "then-current placement" for the student is the school designated in the IEP, the student is permitted to remain in that school—to "stay put"—and to have her education funded, until the conclusion of the due process hearing or another pendency-setting event.  The "stay-put" provision "requires a school district to continue funding whatever educational placement was last agreed upon for the child until the relevant administrative and judicial proceedings are complete."  *Doe v. E. Lyme Bd. of Educ.*, 790 F.3d 440, 452 (2d Cir. 2015).

The parties agree that there are at least three pendency-setting events that may occur that would effectuate a change to an individual student's pendency program for purposes of the stay-put provision: (1) an agreement between the parents and the school district, such as a settlement agreement that specifies a pendency placement; (2) an unappealed IHO or SRO decision on the merits determining the FAPE for a student; and (3) a determination by a court on review of an SRO's decision determining the FAPE for a student.  Dkt. No. 62 at 2 n.2; Dkt. No. 64 at 1–2.  Upon the occasion of any of those events, the student's pendency placement will be that reflected in the settlement agreement, the unappealed IHO or SRO decision on the merits, or the court determination.  The dispute in this case concerns whether there is an additional pendency-setting event that would effectuate a change in an individual student's pendency program on a going forward basis: that is, an unappealed Order of Pendency entered by an IHO in a due process proceeding.  Dkt. No. 35 at 2.

## II.    Plaintiffs and Plaintiffs-Intervenors

In its current posture, this case involves pendency claims of three New York students who are covered under the IDEA:  R.S., T.W.C., and A.W.  Dkt. Nos. 24, 57.  Each brings the action by and through their parents.  Dkt. Nos. 24, 57.  The Court discusses each student's placement in detail.

A.      R.S.

As of the date of the Second Amended Complaint ("SAC"), R.S. was a sixteen-year old student with a disability receiving special education services from the DOE.  Dkt. No. 24 ¶¶ 3, 20.  Pursuant to an IEP dated April 25, 2017, R.S. attended the Community School from fourth to seventh grade.  *Id.* ¶ 4; Dkt. No. 24-1 at 2.  The Community School has an Upper School that starts in eighth grade; the Community School did not offer R.S. a placement in that Upper School for eighth grade.  Dkt. No. 24 ¶ 35.  Accordingly, without a pendency placement, R.S.'s parents unilaterally placed R.S. at the Winston Preparatory School ("Winston") for the 2018–2019 (or eighth-grade) school year.  *Id.* ¶¶ 4, 36; Dkt. No. 24-1.  DOE subsequently funded tuition for that placement pursuant to a settlement agreement between the parties.  Dkt. No. 24 ¶ 36.  R.S.'s parents re-enrolled R.S. in Winston for the 2019–2020 school year and filed a due process complaint to obtain an appropriate placement, requesting that during the pendency of the due process hearing, DOE fund Winston.  *Id.* ¶ 37.  The IHO held a hearing on pendency on September 20, 2019.  *Id.*  The IHO issued an interim order a few days later holding that Winston was R.S.'s pendency placement.  *Id.*  On September 24, 2019, the IHO issued an interim order on pendency, rejecting DOE's position that the program at Winston was not consistent with the last agreed upon program and finding that R.S.'s placement at Winston should be maintained because there was "no placement offer currently in effect" and R.S. had attended Winston for the prior two school years.  Dkt. No. 24-1 (citing *Gabel ex rel. LG v. Board of Educ of Hyde Park*, 368 F. Supp. 2d 313 (S.D.N.Y. 2005)).  The order was not appealed, and the hearing was resolved by a settlement agreement according to which the DOE funded Winston for the 2019–2020 school year.  Dkt. No. 24 ¶ 37.

For tenth grade (2020–2021), R.S.'s parents again enrolled R.S. in Winston and filed a due process complaint to obtain an appropriate placement and requested that, during the

pendency of the due process hearing, DOE fund Winston. *Id.* ¶ 38. On December 19, 2020, IHO Ned Kassman issued an interim pendency order finding pendency to be at Winston and directing DOE to fund the pendency placement from the date of the due process complaint through the resolution of the due process complaint. Dkt. No. 24-2 at 20. IHO Kassman found that the 2017 IEP did not identify a "specific bricks and mortar"[3] placement for R.S. and that DOE had not offered a bricks and mortar placement for the 2020–2021 school year. *Id.* at 8. IHO Kassman stated that where a placement was unavailable or not offered by DOE, the child's placement at the time of the due process complaint is the "operational placement," which in the case of R.S. was Winston—the school that R.S. had attended for the prior two years. *Id.* at 8–9. The IHO stated that while the prior settlement agreements could not be relied upon to determine pendency, those agreements also did not foreclose the IHO from determining that Winston was the then-current placement. *Id.* at 10. IHO Kassman also found that pendency was established based upon the similarity between the program at Winston and the recommendation in the last agreed upon IEP. *Id.* at 19. The DOE did not appeal the IHO's pendency order. No. 24 ¶ 38.

For eleventh grade (2021–2022), R.S.'s parents again enrolled R.S. in Winston and filed a due process complaint to obtain an appropriate placement and requested that, during the pendency of the due process hearing, DOE fund Winston. *Id.* ¶ 39. On November 4, 2021, the IHO issued an interim order on pendency and found Winston to be R.S.'s pendency placement. *Id.* The hearing officer found that "the two unappealed Orders on Pendency establish Winston as the student's last agreed upon placement." Dkt. No. 24-3 at 4. She stated, "[p]endency was litigated in two subsequent school years, with decisions favorable to the parents. The DOE's

---

[3] A "bricks and mortar" placement refers to a specific school location that the student could attend.

decision not to appeal either decision[] allowed the student to remain there with DOE funding. This constitutes an agreement to the placement." *Id.*

DOE appealed the November 4, 2021 interim Order on Pendency and the SRO sustained the appeal.  No. 24 ¶ 38.  SRO Steven Krolak determined that "a pendency decision in one proceeding may not serve as the basis for pendency in a future proceeding because, in order to represent an agreement between the parties, the unappealed decision upon which pendency may be based must be a decision on the merits, including a determination of the appropriateness of the unilateral placement."  Dkt. No. 24-4 at 6.  SRO Krolak also determined that as the two prior pendency determinations were both interim decisions and "there was no final determination in either proceeding, the interim decisions . . . cannot be considered as binding unappealed determinations."  *Id.*  SRO Krolak determined that R.S.'s pendency lay in the April 2017 IEP. *Id.* at 9.

On July 7, 2022, the IHO ruled on the underlying merits of R.S.'s parents' due process claim and found in the parents' favor.  Dkt. No. 40 at 1; Dkt. No. 43 at 4.  The IHO ordered tuition reimbursement for the 2021–2022 school year at Winston.  Dkt. No. 40 at 1.  The DOE states that it does not intend to appeal the IHO's July 7, 2022 decision.  Dkt. No. 41 at 6.

**B.      T.W.C.**

T.W.C. is an eleven-year old student who resides in New York City and is a child with a disability within the meaning of the IDEA.  Dkt. No. 57 ¶ 13.[4]  T.W.C. was diagnosed with Rubinstein Taybi Syndrome at age one, which is an intellectual disability and rare developmental disability associated with specific physical characteristics and learning disabilities.  *Id.* ¶ 30.  He received early intervention services and, at age three, transitioned to pre-school special education

---

[4] T.W.C. bring his complaint in intervention through his mother and next friend, E.Y., and his father and next friend, T.C.  Dkt. No. 57 ¶ 1.

services pursuant to an IEP dated October 23, 2014.  *Id.* ¶¶ 31, 39.  For preschool, he attended

Roosevelt's Children's Center in a 6:1:2 class.  *Id.*  The DOE has recommended the same 6:1:1

District 75 program since the 2016–2017 school year, but T.W.C.'s parents have rejected the

proposed IEP and placement and have unilaterally placed T.W.C. at Manhattan Children's

Center ("MCC"), which he has attended since 2015.  *Id.* ¶¶ 32–33.

The DOE has funded T.W.C.'s placement at MCC for the last six years and MCC has

been recognized as T.W.C.'s pendency placement for the last three years.  *Id.* ¶ 33.  In an interim

order dated November 5, 2019 (in Case No. 184383), IHO Israel S. Wahrman found that the

"DOE ha[d] not offered any other placement as pendency and both parties agree that pendency is

at the Manhattan Children's Center."  Dkt. No. 57-1 at 2.  IHO Wahrman ordered that "for the

time being," DOE would fund T.W.C.'s attendance at MCC.  *Id.*  DOE did not appeal the

November 5, 2019 order on pendency.  Dkt. No. 57 ¶ 35.  T.W.C.'s parents submitted a

Pendency Form on June 18, 2020, seeking reimbursement from DOE for placement at MCC for

the 2020–2021 school year based on October 23, 2014 IEP and the November 5, 2019 order on

pendency.  Dkt. No. 57-2.  On September 23, 2020, DOE agreed that MCC was T.W.C's place

of pendency.  *Id.*; Dkt. No. 57 ¶ 36.  DOE noted on the Pendency Form that "[p]endency lies in

parties' 9/5/19 agreement made as part of DPC 184383.  See hearing transcript."  Dkt. No. 57-2.

T.W.C.'s parents brought a due process complaint related to the 2021–2022 school year

and, in October and November 2021, IHO Sharyn Finkelstein conducted a pendency hearing for

T.W.C.  Dkt. No. 57 ¶ 37.  T.W.C.'s parents maintained that T.W.C.'s pendency was MCC

which they noted had been found to be the basis for pendency as recently as September 23, 2020.

Dkt. No. 57-3 at 3.  DOE maintained that pendency could not be based upon a prior pendency

order but had to be based on a prior Findings of Fact and Decision ("FOFD") or a prior IEP.  *Id.*

In an interim order dated November 27, 2021, IHO Finkelstein rejected DOE's position and found that "MCC is the basis of pendency," that "DOE has failed to provide Student with *any* program or placement for 2021-2022," that T.W.C. was attending MCC when the due process complaint was filed, and that MCC "is the only school he has attended since 2015." Dkt. No. 57 ¶ 37. The IHO stated, "to remove Student from the school where he has attended for years with no other alternative would be contrary to the purposes of pendency." *Id.* ¶ 40. DOE did not appeal the November 27, 2021 order on pendency. *Id.* ¶ 41.

For the 2022–2023 school year, T.W.C.'s parents again unilaterally placed T.W.C. at MCC. Dkt. No. 54. ¶ 10. On July 11, 2022, they filed a due process complaint on behalf of T.W.C. seeking tuition funding for his placement at MCC. *Id.* ¶ 11. T.W.C.'s parents also submitted to DOE a pendency form requesting pendency funding for T.W.C. at MCC for the 2022–2023 school year. *Id.* ¶ 12. On October 28, 2022, DOE agreed to fund pendency at MCC for T.W.C. for the 2022–2023 school year. *Id.* ¶ 13. The DOE's agreement to fund pendency at MCC was made pursuant to the 2020–2021 school year pendency agreement. *Id.* A pendency form agreeing to fund tuition for the 2022–2023 school year was entered that same day. *Id.* ¶ 15.

## III.    A.W.

A.W. is a ten-year old student who resides in New York City and is a child with a disability within the meaning of the IDEA. Dkt. No. 57 ¶ 16. A.W. has diagnoses of Autism Spectrum Disorder, Language Disorder, ADHD (Combined-Type moderate) and Specific Learning Disability, with impairments in reading and written expression. *Id.* ¶ 44. He has been classified with Autism by the CSE. *Id.* A.W.'s parents enrolled him at a Montessori school at age three, but he was asked to leave because the school determined that it could not meet his needs. *Id.* ¶ 46. A.W. was evaluated by the Committee on Pre-School Education in October 2015, and he began receiving preschool special education services at NYL William O'Connor

Greenpoint and then transitioned to the NYL Midwood preschool site, which was closer to his home. *Id.* ¶ 47.

A.W. began attending the Aaron School ("Aaron") for the 2017–2018 school year. *Id.* ¶ 48. DOE has funded his tuition there for the following school years: 2017–2018, 2018–2019, 2019–2020, 2020–2021, and 2021–2022. *Id.* ¶ 48.

On July 2, 2021, A.W.'s parents filed a due process complaint alleging that A.W. was denied a FAPE for the 2021–2022 school year and seeking pendency for A.W.'s enrollment at Aaron beginning in July 2020. Dkt. No. 57-4. In a pendency decision dated December 1, 2021, IHO Randy Glasser determined that A.W.'s pendency placement was at Aaron. Dkt. No. 57. ¶ 49. The IHO found that the last agreed IEP was when A.W. was five years old and still in preschool, dated November 16, 2016, and that it could not "constitute the Student's pendency placement, because to do so would 'not preserve the status quo' but rather disrupt it." *Id.* ¶ 50 (citation omitted). IHO Glasser ordered DOE to fund A.W.'s placement at Aaron for the duration of the due process proceeding. Dkt. No. 57-4 at 12.

For the 2022–2023 school year, A.W.'s parents unilaterally placed him at Aaron. Dkt. No. 54 ¶ 4. On July 5, 2022, A.W.'s parents filed a due process complaint, challenging the IEP and placement for the 2022–2023 school year and asserting that Aaron was his pendency placement. *Id.* ¶ 5; Dkt. No. 57 ¶ 51. On October 11, 2022, an IHO issued a FOFD in A.W.'s favor, granting full tuition relief at Aaron for the 2022–2023 school year. Dkt. No. 54 ¶ 6; Dkt. No. 54-1. DOE does not intend to appeal the October 11, 2022 FOFD. Dkt. No. 54 ¶ 7.

**PROCEDURAL HISTORY**

The action was initiated by complaint accepted for filing on December 13, 2021 by

Plaintiffs.  Dkt. No. 6.[5]  It alleges that R.S. was a sixteen-year old student with a disability

receiving special education services from DOE.  *Id.* ¶ 3.  The complaint further alleges that New

York IHOs three times held that R.S. has a pendency placement at Winston but that DOE had

refused to fund R.S.'s placement at Winston pending a due process hearing regarding R.S.'s

appropriate educational placement for the 2021–2022 academic year.  *Id.* ¶ 4.  On December 16,

2021, Plaintiffs filed an amended complaint.  Dkt. No. 10.  On March 18, 2022, Plaintiffs filed

the SAC.  Dkt. No. 24.  The SAC requests the following relief: (1) preliminary and permanent

injunctive relief requiring DOE to fund R.S.'s placement at Winston for special education

services for the 2021–2022 academic year pending the decision on the due process hearing; (2) a

declaratory judgment that provides that an unappealed decision on pendency by an IHO

constitutes a decision on the merits of the pendency placement and therefore constitutes an

agreement on pendency; and (3) attorneys' fees and litigation costs, and other relief as the Court

deems appropriate.  *Id.* at 13–14.  Defendant filed its answer on April 1, 2022.  Dkt. No. 25.

On June 10, 2022, Plaintiffs filed their motion for summary judgment along with a

supporting memorandum of law.  Dkt. Nos. 34–35.  Defendant filed its cross-motion for

summary judgment and a supporting memorandum of law on July 18, 2022.  Dkt. Nos. 38–39.

On August 1, 2022, Plaintiffs filed a reply memorandum of law in further support of their motion

for summary judgment and in opposition to Defendant's motion for summary judgment.  Dkt.

---

[5] The caption of the initial complaint refers to L.H.B. but that individual is nowhere else referred to in the complaint, which identifies C.S. as the mother of R.S. and RO.S as the father of R.S. Dkt. No. 6 ¶ 1.  The error in the caption was corrected in the amended complaint.  Dkt. No. 10. Plaintiffs first attempted to file their complaint on December 10, 2021.  The complaint was rejected by the Clerk of the Court for a filing error.  Dkt. No. 1.

No. 40.  On August 15, 2022, Defendant filed a reply memorandum of law in further support of

its cross-motion for summary judgment.  Dkt. No. 41.  In that reply memorandum of law,

Defendant raised for the first time that Plaintiffs' claims were moot as an IHO had issued a

FOFD in R.S.'s favor in the underlying administrative proceeding.  Dkt. No. 41 at 4–5.

Plaintiffs-Intervenors filed a motion to intervene on September 12, 2022.  Dkt. No. 42.

Defendant opposed the motion.  Dkt. No. 46.  By memorandum and order dated October 21,

2022, the Court granted the motion to intervene.  Dkt. No. 48.  The Court noted that the order

would not unduly delay the action or prejudice the adjudication of the rights of the original

parties as the parties' cross-motions for summary judgment had only recently become fully

submitted.  *Id.* at 3.  The Court also noted that permissive intervention was in the interest of

judicial efficiency because "permissive intervention will permit the Court to decide the

substantive legal question that is now fully briefed without the need presumably to worry about

mootness."  *Id.*  The Court then directed Plaintiffs-Intervenors to file their proposed compliant in

intervention by October 24, 2022 and to inform the Court by letter no later than October 28,

2022 whether further briefing was required on any issues distinctive to the Plaintiffs-Intervenors.

*Id.* at 5.

Plaintiffs-Intervenors' complaint was accepted for filing on December 12, 2022.[6]  Dkt.

No. 57.  In that complaint, they seek permanent injunctive relief requiring DOE to fund T.W.C.'s

placement at MCC and A.W.'s placement at Aaron for special education services for the 2022–

2023 academic year pending the decision on their due process complaints.  *Id.* at 11.  They also

seek a declaratory judgment providing that an unappealed decision on pendency by an IHO

---

[6] Plaintiffs-Intervenors initially attempted to file the Intervenor Complaint on October 24, 2022
but it was rejected due to certain deficiencies.  Dkt. No. 49.

constitutes a decision on the merits of the pendency placement and therefore constitutes an agreement on pendency, as well as attorneys' fees and costs.  *Id.*

On November 18, 2022, Defendant filed a supplemental memorandum of law in further support of its cross-motion for summary judgment as to Plaintiffs-Intervenors.  Dkt. No. 52.  On December 9, 2022, Plaintiffs and Plaintiffs-Intervenors filed a supplemental reply memorandum of law.  Dkt. No. 56.

The Court held oral argument on the motions on February 2, 2023.  At oral argument, counsel for Plaintiffs and Plaintiffs-Intervenors conceded that the claims of A.W. and R.S. "are moot."  Dkt. No. 59 at 29.  Counsel noted that "while this case was pending," they chose "to litigate the case[s] to a final decision and won" and so "they have a pendent placement going forward."  *Id.* at 29–30.  Counsel for Plaintiffs and Plaintiffs-Intervenors, however, stated that T.W.C.'s case was still pending and therefore was not moot in this regard.  *Id.*  Although A.W. and R.S. were the beneficiaries of final decisions on the merits, T.W.C. was a beneficiary only of an agreement that DOE would fund pendency for T.W.C. for the 2022–2023 school year.  Thus, counsel argued that T.W.C.'s claims would fall "under the exception to the mootness doctrine [for] voluntary cessation."  *Id.* at 29.  Counsel also argued that if the agreement did not establish T.W.C.'s pendency placement on an ongoing basis then T.W.C.'s claim would fall into the exception to mootness for actions that are capable of repetition yet evade review.  *Id.* at 31.

In response, counsel for Defendant contended that the pendency agreement with T.W.C. is "the most recent pendency setting event" and could be used to establish pendency for all future years absent some intervening pendency-setting event that changes placement.  *Id.* at 34. Counsel for Defendant therefore argued that T.W.C. was similar to A.W. and R.S. in that the

agreement was essentially the equivalent of a final determination on the merits in a due process proceeding as it also established pendency on a going forward basis. *Id.* at 35.

At the conference, the Court directed Defendant to submit a letter to the Court by February 16, 2023, confirming that it was the DOE's policy that a pendency form in which the DOE agrees to fund a certain institution as the student's pendency placement would establish that institution as the student's pendency placement for future years, absent some intervening pendency-setting event. *Id.* at 40.  The Court also directed counsel for Defendant to detail how long this has been the city's position so that it could ensure that it was not "just a convenient litigation position." *Id.* at 41.  The Court provided Plaintiffs and Plaintiffs-Intervenors the opportunity to respond and Defendant the opportunity to reply. *Id.* at 57.

On February 16, 2023, Defendant filed the requested letter.  Dkt. No. 61.  Defendant states:

> It is the Department's position that where no intervening, pendency-setting events have occurred which would effectuate a change to the student's pendency program, the pendency form entered for a prior school year could be used to establish pendency for a future school year.  By way of example, as to Student T.W.C., the pendency form entered on October 28, 2022, could be used to establish pendency for Student T.W.C. at MCC—the agreed-upon placement—for the upcoming 2023–2024 school year, absent some intervening pendency-setting event, such as an administrative decision or determination by a court to the contrary.

*Id.* at 1.  Defendant also states that it has been the DOE's practice to utilize the "pendency form" to identify and implement pendency "since July of 2020." *Id.* at 2.

Plaintiffs and Plaintiffs-Intervenors filed a response on February 23, 2023.  Dkt. No. 62. In that letter, counsel argues that Defendant's February 16 letter makes clear that "Defendant's position on pendency for T.W.C. is entirely voluntary and would not necessarily apply for the 2023–2024 school year or any other subsequent school year." *Id.* at 2.  Counsel contends that the use of the language "could be" in Defendant's letter indicates that "Defendant's actions are

entirely voluntary and that there is no policy that requires DOE to use T.W.C.'s pendency form for the 2022–2023 school year due process hearing as establishing the pendency placement for the 2023–2024 and subsequent school years." *Id.* Plaintiffs and Plaintiffs-Intervenors also take issue with Defendant's claim that it had been DOE's policy to look to the pendency form since July of 2020 as DOE had contested T.W.C.'s pendency for the 2021–2022 school year despite the September 2020 pendency agreement. *Id.* Finally, they state that if there are any concerns about mootness, they are prepared to add an additional student plaintiff-intervenor as well as his parents to the case. *Id.*

Defendant filed its reply on February 28, 2023. Dkt. No. 64. In that reply, Defendant states that the voluntary cessation exception to mootness does not apply to T.W.C.'s claims as the DOE's agreement to fund tuition for the 2022–2023 school year was "taken pursuant to the 2020–2021 school year pendency agreement, and not pursuant to the instant federal action." *Id.* at 1. Defendant also states that Plaintiffs and Plaintiffs-Intervenors read too much into Defendant's use of the phrase "could be," and that "absent an intervening, pendency-setting event as to Student T.W.C., the October 28, 2022 agreement, will be used to establish pendency for Student T.W.C. at MCC for the upcoming 2023–2024 school year." *Id.* at 1–2. As to the DOE's decision to contest T.W.C.'s pendency for the 2021–2022 school year, it notes: "Department cannot provide a definitive answer as to why the 2020–2021 pendency agreement was not used for the 2021–2022 school year, it notes that this oversight was subsequently corrected by the Department for the 2022–2023 school year, the school year at issue in this matter, upon the entering of the October 28, 2022 agreement." *Id.* at 2. Finally, Defendant states that it opposes any application by Plaintiffs and Plaintiffs-Intervenors to file a second motion to intervene as it would be untimely and prejudicial. *Id.*

**DISCUSSION**

The merits question at issue in this case is whether an unappealed decision on pendency by an IHO constitutes a decision on the merits of the pendency placement and therefore constitutes an agreement on pendency, establishing pendency in subsequent due process proceedings until another pendency-setting event occurs.  Dkt. No. 24 at 13–14.  Plaintiffs and Plaintiffs-Intervenors take the position that it does, *id.*, while Defendant takes the position that it does not, Dkt. No. 39 at 1.  This appears to be an issue of first impression.

Before the Court may address this issue, it must determine whether it has the authority to do so and, if it does, whether it should exercise that authority.  Defendant argues that the claims of the Plaintiffs and Plaintiffs-Intervenors are moot.  Dkt. Nos. 41 at 4–8; Dkt. No. 52 at 4–7.  For the reasons that follow, the Court agrees.

**I.     Mootness**

Article III of the United States Constitution requires an actual case or controversy to exist at all stages of federal court review to support a court's subject matter jurisdiction.  *See Preiser v. Hewkirk*, 422 U.S. 395, 401 (1975).  The mootness doctrine is derived from the constitutional requirement that the power of federal courts depends upon the existence of live cases or controversies.  *See DeFunis v. Odegaard*, 416 U.S. 312, 316 (1974) (per curiam); *see also In re Kurtzman*, 194 F.3d 54, 58 (2d Cir. 1999) (per curiam).  "The hallmark of a moot case or controversy is that the relief sought can no longer be given or is no longer needed."  *Martin-Trigona v. Shiff*, 702 F.2d 380, 386 (2d Cir. 1983).  When "the parties lack a legally cognizable interest in the outcome, a case is moot and the federal court is divested of jurisdiction over it."  *Catanzano v. Wing*, 277 F.3d 99, 107 (2d Cir. 2001) (cleaned up).  The purpose of the mootness doctrine is to ensure "that the litigant's interest in the outcome continues to exist throughout the life of the lawsuit, including the pendency of the appeal.  Accordingly, a case that is 'live' at the

outset may become moot 'when it becomes impossible for the courts, through the exercise of

their remedial powers, to do anything to redress the injury.'" *Cook v. Colgate Univ.*, 992 F.2d

17, 19 (2d Cir. 1993) (internal citations omitted).  Mootness doctrine also stems from the

principle that "[a] federal court lacks the power to render advisory opinions and the authority 'to

decide questions that cannot affect the rights of litigants in the case before them.'" *Penguin*

*Books USA Inc. v. Walsh*, 929 F.2d 69, 72 (2d Cir. 1991) (quoting *North Carolina v. Rice*,

404 U.S. 244, 246 (1971)).

### A.     R.S. and A.W.

The claims of both R.S. and A.W. and their parents are moot.  In the cases of both, an

IHO issued a FOFD in favor of these students, granting full tuition relief for the school years in

question and agreeing on the merits with their parents as to the appropriateness of their proposed

placements.  Dkt. No. 40 at 1–2, 7; Dkt. No. 54 ¶ 6.  Defendant has not appealed these orders and

does not intend to appeal them.  Dkt. No. 41 at 5; Dkt. No. 54 ¶ 7.  Specifically, on July 7, 2022,

the IHO issued a FOFD in R.S.'s favor in the underlying administrative proceeding agreeing

with the parents as to the appropriateness of R.S.'s placement at Winston, ordering tuition

reimbursement for the 2021–2022 school year, and the DOE did not appeal the FOFD, making it

a final decision on the merits.  Dkt. No. 40 at 1–2, 7; Dkt. No. 41 at 5.  In the case of A.W., an

IHO issued a FOFD on October 11, 2022 in A.W.'s favor, granting full tuition relief for the

2022–2023 school year for his unilateral placement at Aaron.  Dkt. No. 54 ¶¶ 5-6; Dkt. No. 54-1.

DOE does not intend to appeal the October 11 FOFD.[7]  Dkt. No. 54 ¶ 7.

---

[7] Because these parties no longer have a personal stake in the litigation, their claims for
declaratory relief are also moot.  "[A] mere demand for declaratory relief does not by itself
establish a case or controversy necessary to confer subject matter jurisdiction.' [Rather,] [w]here
'the remedy sought is a mere declaration of law without implications for practical enforcement
upon the parties, the case is properly dismissed.'" *Modest Needs Found. v. Bianco*, 2017 WL
3130416, at *11 (S.D.N.Y. July 21, 2017) (quoting *Mitskovski v. Buffalo & Fort Erie Pub.*

Plaintiffs initially argued in their reply brief on behalf of R.S. that the matter was not moot because the IHO decision could be appealed and because DOE had not paid the tuition at issue.  Dkt. No. 40 at 7.  They also contended that R.S. was a seventeen-year-old student who was entitled to a FAPE until he graduated or aged out at twenty-two years' old and therefore might again become "subject to the DOE's rule that an unappealed pendency order does not apply in subsequent litigation between the parties."  *Id.*  However, since then, Defendant has stated that DOE does not intend to appeal either decision, Dkt. No. 54 ¶ 7, and Plaintiffs and Plaintiffs-Intervenors have agreed that the claims of R.S. and A.W. and their parents are moot unless they fall into the exception for claims that are capable of repetition yet evading review, Dkt. No. 62 at 1 n.1.

The "capable of repetition, yet evading review" exception to the mootness doctrine only applies in "exceptional situations" "where the following two circumstances are simultaneously present: (1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again."  *Ramos v. New York City Dep't of Educ.*, 447 F. Supp. 3d 153, 158 (S.D.N.Y. 2020) (quoting *Russman v. Bd. of Educ. of Enlarged City Sch. Dist. of Watervliet*, 260 F.3d 114 (2d Cir. 2001)).  To satisfy this requirement, plaintiff must show that they are "reasonably likely" to find themselves in a dispute raising the same issues; "mere speculation that the parties will be involved in a dispute over the same issue does not rise to the level of a reasonable expectation or demonstrated probability of recurrence."  *Id.* (quoting *Dennin v. Conn.*

---

*Bridge Auth.*, 415 Fed. App'x. 264, 267 (2d Cir. 2011) (summary order)).  These parties' request for attorneys' fees also does not save their claims from mootness.  *See Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 480 (1990) ("This interest in attorney's fees is, of course, insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim.").

*Interscholastic Athletic Conference, Inc.*, 94 F.3d 96, 101 (2d Cir. 1996)).  As the Supreme Court

has stated: "the capable-of-repetition doctrine applies only in exceptional situations, and

generally only where the named plaintiff can make a reasonable showing that he will again be

subjected to the alleged illegality."  *City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983).

Here, the claims involving R.S. and A.W. fail to satisfy the second requirement.

Plaintiffs and Plaintiffs-Intervenors concede that as a result of the FOFDs in the cases of both

R.S. and A.W., R.S. has Winston as his pendency placement and A.W. has Aaron as his

pendency placement "for any future litigation regarding placement at those schools" and that

"they no longer need to rely on pendency orders from prior proceedings."  Dkt. No. 56 at 2.

Defendant agrees, noting that such a final decision on the merits creates an entitlement to

pendency prospectively.  Dkt. No. 41 at 5 (citing *Ventura de Paulino*, 959 F.3d at 532).

Consequently, for the injury in this case to recur, the parents of R.S. and A.W. would need to

remove them from these institutions, transfer them to new placements unilaterally, "pursue

another due process proceeding seeking funding for the new placement and meanwhile seek

pendency payment for the new program," receive a pendency decision in their favor, and then

seek to use that interim pendency decision to establish pendency for a future school year.

*Ramos*, 447 F. Supp. 3d at 159.  "There is no indication in the record" that any of these steps, let

alone all of them, are likely to occur.  *Id.*  It is therefore mere speculation that these parties will

be involved in a dispute over the same issues again and thus this narrow exception to mootness

principles does not apply.  *See F.O. v. New York City Dep't of Educ.*, 899 F. Supp. 2d 251, 255

(S.D.N.Y. 2012) ("[M]ere speculation that the parties will be involved in a dispute over the same

issues does not rise to the level of a reasonable expectation or demonstrated possibility of

recurrence." (quoting *Dennin*, 94 F.3d at 101)).

### B.     T.W.C.

T.W.C.'s claims are also now moot.  DOE has agreed to fund pendency at MCC for

T.W.C. for the 2022–2023 school year (*i.e.*, the school year in question) based on a

September 23, 2020 agreement between DOE and T.W.C.'s parents made during the 2020–2021

school year.  Dkt. No. 54 ¶ 13.  T.W.C. thus has obtained the relief that he seeks.[8]  Dkt. No. 57 at

11.

Similar to the FOFDs for R.S. and A.W., the agreement between T.W.C. and his parents

and DOE also eliminates any reasonable probability that DOE in the future will take the position

that T.W.C.'s pendency should be determined based on the October 2014 IEP.  *See Ramos*,

447 F. Supp. 3d at 158.  DOE affirmed both at oral argument and in letters to the Court that, as a

matter of consistent practice, the pendency agreement it reached with respect to T.W.C. for the

2022–2023 school year will effectively displace the October 2014 IEP and will be used by the

DOE to establish T.W.C.'s pendency placement for each future school year after 2022–2023,

absent some new intervening pendency-setting event.  Dkt. No. 59 at 34; Dkt. Nos. 61, 64.  The

DOE stated: "It is the Department's position that where no intervening, pendency-setting events

have occurred which would effectuate a change to the student's pendency program, the pendency

form entered for a prior school year could be used to establish pendency for a future school

year."  Dkt. No. 61 at 1.  DOE also stated that it has been the DOE's practice to utilize the

"pendency form" to identify and implement pendency since July of 2020.  *Id.* at 2.  Thus, similar

to R.S. and A.W., if not identical, T.W.C. appears to have obtained relief not only for the year in

question but, absent some other pendency-setting event, relief establishing MCC as T.W.C.'s

pendency placement for future years.  It is only if a new pendency-setting event, such as a new

---

[8] *See supra* n.7.

FOFD or a new agreement between T.W.C. and his parents, that MCC will be displaced as T.W.C.'s placement for purposes of the stay-put provision.

Neither the exception for disputes that are capable of repetition yet evading review nor the voluntary cessation doctrine applies here. The exception for disputes capable of repetition yet evading review does not apply. Unlike the voluntary cessation doctrine which places on the party seeking dismissal the "formidable burden," *Holland v. Goord*, 758 F.3d 215, 223–24 (2d Cir. 2014), of showing that "there is no reasonable expectation that the alleged violation will recur" and that "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation," *Lallave v. Martinez*, 2022 WL 2338896, at *6 (E.D.N.Y. June 29, 2022) (quoting *Mhany Mgmt., Inc. v. Cnty. of Nassau*, 819 F.3d 581, 603 (2d Cir. 2016)), and which thus cannot be satisfied by uncritical acceptance of a government representation, *see Saba v. Cuomo*, 535 F. Supp. 3d 282, 297 (S.D.N.Y. 2021), it is the plaintiff's burden to show that a lawsuit is *not* moot because the case is capable of repetition yet evades review, *see Video Tutorial Servs., Inc. v. MCI Telecommunications Corp.*, 79 F.3d 3, 6 (2d Cir. 1996) (noting that plaintiff bears the burden of demonstrating that a controversy is capable of repetition yet evading review); *Ramos*, 447 F. Supp. 3d at 158. The capable of repetition yet evading review exception also applies "only in exceptional situations." *Lyons*, 461 U.S. at 109.

Thus, the fact that DOE will only treat MCC as T.W.C.'s pendency placement going forward as a matter of consistent "practice" and not as official or binding policy is not sufficient for T.W.C. and his parents to invoke the latter exception for disputes capable of repetition yet evading review.[9] Dkt. No. 61 at 1; Dkt. No. 62 at 2. DOE's definitive declarations in its letter to

---

[9] This is in contrast to R.S. and A.W.'s chosen placement, which will be treated as a pendency placement as a matter of law, as the two have a legal right to have the schools identified in the unappealed FOFDs constitute their pendency placement going forward. *See Arlington Cent. Sch.*

this Court combined with the pendency agreement for T.W.C. as to the 2022–2023 school year

make it extraordinarily unlikely as a practical matter that T.W.C. will be given a placement other

than MCC in the future, absent an interim pendency-setting event.  Defendant has declared in no

uncertain terms that MCC will be T.W.C.'s pendency placement going forward absent a new

pendency setting event.  That statement comes with the assurances of truthfulness that a

statement from counsel, dutybound not to mislead the court, Model R. Prof'l Conduct 3.3, is

entitled to receive.  Moreover, and importantly, because the Court relies on such statements in

reaching its decision, DOE will be estopped from taking any contrary position with respect to

T.W.C. going forward.  *See Uzdavines v. Weeks Marine, Inc.*, 418 F.3d 138, 147 (2d Cir. 2005)

("The equitable doctrine of judicial estoppel provides that, '[w]here a party assumes a certain

position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter,

simply because his interests have changed, assume a contrary position, especially if it be to the

prejudice of the party who has acquiesced in the position formerly taken by him.'" (citation

omitted)); *Kosakow v. New Rochelle Radiology Assocs.*, *P.C.*, 274 F.3d 706, 725 (2d Cir. 2001).

Finally, DOE has also provided a declaration from an attorney for DOE that supports that such a

practice exists.  Brian Reimels, Managing Attorney in the Special Education Unit, declared

"under penalty of perjury" that the DOE agreed to fund T.W.C.'s pendency at MCC for the

2022–2023 school year because of the "September 23, 2020 agreement between the Department

and Student T.W.C.'s Parents made during the 2020–2021 school year."  Dkt. No. 54 ¶ 13.  It is

of course possible that a new IEP will identify a different school as the appropriate placement for

T.W.C.  However, if that IEP is challenged through a due process complaint, T.W.C. will be

---

*Dist. v. L.P.*, 421 F. Supp. 2d 692, 697 (S.D.N.Y. 2006) (stating that a pendency placement is
changed by an unappealed decision of an IHO).

permitted to stay put at MCC in the interim.  And, if that due process challenge should fail and T.W.C. is placed in a school different from MCC to the disappointment of T.W.C.'s parents, that will raise a different dispute and not the dispute currently before the Court.  *See Ramos*, 447 F. Supp. 3d at 158 ("[A] party seeking to avoid the effect of the mootness doctrine [must] 'show that these same parties are reasonably likely to find themselves again in dispute over the issues raised[.]'" (citation omitted)).  In short, for the same claims between T.W.C. and DOE at issue in this lawsuit to reoccur, a new pendency-setting event would have to occur, establishing a new institution as T.W.C.'s pendency placement.  T.W.C.'s parents would have to then pursue a due process proceeding, receive an interim pendency order from an IHO in their favor, and seek to use that interim pendency order to establish T.W.C.'s place of pendency for a future school year.[10]  The likelihood of all of these steps occurring, at this point in time, is entirely speculative.

Contrary to the argument of Plaintiffs and Plaintiffs-Intervenors, the exception to the mootness doctrine for voluntary cessation also is not sufficient to keep this dispute alive. Plaintiffs and Plaintiffs-Intervenors note that Defendant's decision to fund T.W.C.'s placement at MCC based on the pendency form is entirely voluntary and imply that it was motivated by the intervention of T.W.C. and his parents in the present the lawsuit.  Dkt. No. 62 at 2.

The voluntary cessation doctrine provides that "a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice."  *Mhany Mgmt., Inc.*, 819 F.3d at 603 (quoting *City of Mesquite v. Aladdin's Castle,*

---

[10] Plaintiffs and Plaintiffs-Intervenors point to the administrative proceeding involving T.W.C. for the 2021–2022 school year to cast doubt on DOE's representations, but there is no evidence that DOE took the position that a pendency form did not establish pendency for the following year.  While the IHO interim pendency order as to T.W.C. for the 2021–2022 school year states that DOE took the position that pendency "cannot be based on a prior pendency order," it is entirely silent as to whether DOE took a position on whether pendency can be based on a prior pendency form.  Dkt. No. 57-3 at 3.

*Inc.*, 455 U.S. 283, 289 (1982)).  It is premised on the principle that "a party should not be able to evade judicial review, or to defeat a judgment, by temporarily altering questionable behavior." *Id.* (quoting *City News & Novelty, Inc. v. City of Waukesha*, 531 U.S. 278, 284 n.1 (2001)). "Were it otherwise, a crafty party could always evade review of a questionable policy, undermine the authority of the courts, and impose impossible burdens on the party who would challenge it by altering the policy the moment a lawsuit is filed only to reinstate it the moment it is dismissed." *Saba*, 535 F. Supp. 3d at 297.  As noted, "[t]o overcome the voluntary cessation exception, [defendants] must show that '(1) there is no reasonable expectation that the alleged violation will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.'" *Lallave*, 2022 WL 2338896, at *6 (quoting *Mhany Mgmt., Inc.*, 819 F.3d at 603).  "[A] defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Holland*, 758 F.3d at 223–24 (quoting *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013)); *see Am. Freedom Def. Initiative v. Metro. Transp. Auth.*, 815 F.3d 105, 110 (2d Cir. 2016) (noting that a defendant bears a "heavy burden of persuasion" with respect to the two prongs of the voluntary cessation doctrine (quoting *United States v. Concentrated Phosphate Exp. Ass'n*, 393 U.S. 199, 203 (1968))); *see also Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000).

The voluntary cessation doctrine does not apply for two reasons.  First, the voluntary cessation doctrine applies where a defendant, prior to the lawsuit, engages in unlawful conduct toward the plaintiff, then voluntarily stops that unlawful conduct once sued.  *See Mhany Mgmt., Inc.*, 819 F.3d at 603; *see also Nike, Inc.*, 568 U.S. at 91; *Friends of the Earth, Inc.*, 528 U.S. at 189.  In that circumstance, the courts are right to approach the claim of mootness with

skepticism.  A defendant may be able to resume its unlawful treatment of the plaintiff once the lawsuit has been mooted and the plaintiff's claims could once again be live.  *See Saba*, 535 F. Supp. 3d at 297 (noting that voluntary cessation doctrine "traces to the principle that a party should not be able to evade judicial review, or to defeat a judgment, by temporarily altering questionable behavior" (quoting *Mhany Mgmt., Inc.*, 819 F.3d at 603)).  Thus, to determine whether the lawsuit is actually moot, a court must consider whether the defendant is reasonably likely to resume its prior unlawful conduct after the litigation has been declared moot.  *See id.* at 295.  In doing so, while the court may consider the representations of the defendant that the violation will not recur, such representation must be closely scrutinized to ensure that they reflect something more than a convenient litigation position.  *Id.* at 296–97.

In the instant case, however, Defendant did not moot T.W.C.'s and his parents' claim by temporarily ceasing its *challenged conduct*.  There is no dispute that Defendant continues to maintain a policy of not recognizing unappealed IHO pendency orders as establishing pendency for future years.  Defendant also did not seek to moot T.W.C.'s and his parents claim merely by making a representation that the pre-existing practice which Plaintiffs and Plaintiffs-Intervenors claimed was unlawful would not be applied to T.W.C.  Defendant bases its argument that their claims are moot on an agreement that Defendant and T.W.C.'s parents voluntarily reached with respect to pendency for the 2022–2023 school year—an agreement T.W.C. could have refused to enter into.  T.W.C.'s parents submitted to the DOE a pendency form requesting pendency funding at MCC for the 2022–2023 school year.  Dkt. No. 54 ¶ 12.  And, in response, on October 28, 2022, DOE agreed to fund pendency at MCC for Student T.W.C. for the 2022–2023 school year and a pendency form agreeing to fund tuition for that school year was entered that same day.  *Id.* ¶¶ 13–14.  There is no evidence that T.W.C. has sought to revoke this agreement

between the parties or declined DOE's promise of tuition for the school year at issue.  This

agreement provides T.W.C. and his parents full relief.  *See Tanasi v. New All. Bank*, 786 F.3d

195, 199 (2d Cir. 2015) ("A case becomes moot [pursuant to Article III's Case or Controversy

Clause] . . . when it is impossible for a court to grant 'any effectual relief whatever to the

prevailing party.'" (quoting *Knox v. Serv. Emps. Int'l Union, Loc. 1000*, 567 U.S. 298, 307

(2012))).  T.W.C. and his parents sought in the instant lawsuit injunctive relief requiring DOE to

fund his placement at MCC for the 2022–2023 academic year pending the decision on his due

process complaint and T.W.C. has gotten precisely that.  Dkt. No. 57 at 11.

The exception to mootness for voluntary cessation thus simply does not apply.  In

substance, T.W.C. is in no different position than any other party who has settled a dispute in

exchange for a defendant's agreement not to engage in what was claimed to be illegal conduct

towards that plaintiff.  *See Raja v. Burns*, 2020 WL 568236, at *8 (E.D.N.Y. Feb. 5, 2020)

("[S]ettlement of an individual claim typically moots any issues associated with it." (quoting

*United Airlines, Inc. v. McDonald*, 432 U.S. 385 (1977) (Powell, J., dissenting))); Wright &

Miller, 13B Fed. Prac. & Proc. Juris. § 3533.2 (3d ed. May 2022 update) (noting that settlement

of a party's claims "may moot an action if it accords all the relief claim").  T.W.C. may argue

that giving effect to Defendant's conduct here in a way that would moot T.W.C.'s claims will

allow Defendant—or anyone similarly situated to Defendant—to pick off the claims of a plaintiff

who chooses to challenge its policy with respect to the treatment of interim pendency orders.

But that would not distinguish this case from any other in which a Defendant—confronted with a

challenge to a generally applicable policy— chooses to settle the matter before a precedent is

developed that is of more general effect.  A plaintiff can decline a settlement offer and can

continue to litigate.[11]  But a plaintiff cannot accept the benefit of a settlement (or something that offers it the relief which it seeks—here, pendency going forward), and then continue to litigate because of the value that such litigation will provide to others, if not to itself in some speculative future state of events.  If Plaintiffs and Plaintiffs-Intervenors wish to challenge Defendant's policy with respect to interim orders, they will need to find a set of parents with whom Defendant is unwilling to settle or who are unwilling to accept Defendant's settlement offer. They cannot challenge the policy through a set of parents who have already received for their child the relief that the parents are seeking.

Second, even if it were applicable, as here, where the claim is not that the allegedly illegal conduct has ceased, the voluntary cessation doctrine would not apply on its own terms. As discussed, the voluntary cessation exception is overcome where the defendant shows that "(1) there is no reasonable expectation that the alleged violation will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.'" *Lallave*, 2022 WL 2338896, at *6 (quoting *Mhany Mgmt., Inc.*, 819 F.3d at 603).  Both of these prongs are met.  Here, the pendency form in which DOE agreed to fund T.W.C.'s education at MCC for the 2022–2023 school year has "completely and irrevocably eradicated the effects of the alleged violation" as to T.W.C. and his parents.  *Id.* (quoting *Mhany Mgmt., Inc.*, 819 F.3d at 603). T.W.C. and his parents sought injunctive relief requiring DOE to fund his placement at MCC for the 2022–2023 academic year pending the decision on his due process complaint and the DOE has agreed to fund T.W.C.'s placement at MCC for the 2022–2023 school year.  Dkt. No. 57 at 11.  There is also no fear that, once this litigation has been mooted, Defendant "will pick up

---

[11] The Court leaves aside the question of whether and how a Defendant can moot a claim through a Rule 68 offer of judgment.  *See Tanasi*, 786 F.3d at 200 (discussing this issue and holding that unaccepted Rule 68 offer does not render claims moot).

where [it] left off," and T.W.C. and his parents' claim will no longer be moot—a central concern

behind the voluntary cessation doctrine and which it seeks to avoid. *Nike, Inc.*, 568 U.S. at 91.

As noted, Defendant entered into a pendency agreement with T.W.C.'s parents in which it agreed

to fund T.W.C.'s tuition for the 2022–2023 school year. Defendant may have already fully paid

this tuition; however, even if it has not, Defendant is now bound to provide T.W.C. and his

parents the full relief that they seek. DOE has also made numerous representations to this Court

that the pendency form for the 2022–2023 will be used to establish T.W.C.'s pendency for future

years, absent some other pendency-setting event. Thus, the allegedly wrongful behavior with

respect to T.W.C and his parents about which they sue consequently cannot "reasonably be

expected to recur" once the lawsuit has concluded. *See Nike, Inc.*, 568 U.S. at 92 (quoting

*Friends of the Earth, Inc.*, 528 U.S. at 190).

For these reasons, the Court finds that the voluntary cessation doctrine does not apply to

T.W.C. and his parents' claims. These claims, like those of R.S. and A.W. and their parents, are

moot.

## II.  Request to Intervene

To avoid rendering the action moot, Plaintiffs and Plaintiffs-Intervenors seek to add an

additional student plaintiff-intervenor, J.F., as well as his parents to the case. Dkt. No. 62 at 2.

They state that three separate, unappealed pendency decisions establish Quad Preparatory School

as J.F.'s pendency placement and J.F. currently has a pending motion on pendency before an

IHO regarding pendency for the 2022–2023 school year. *Id.*

Rule 24(b)(1) provides that "[o]n timely motion, the court may permit anyone to

intervene who: . . . (b) has a claim or defense that shares with the main action a common

question of law or fact." Fed. R. Civ. P. 24(b)(1). Rule 24(b)(3) further instructs: "In exercising

its discretion, the court must consider whether the intervention will unduly delay or prejudice the

adjudication of the original parties' rights."  Fed. R. Civ. P. 24(b)(3); *see New York v. United States Dep't of Health and Human Servs.*, 2019 WL 3531960, at * 3 (S.D.N.Y. Aug. 2, 2019). "A 'district court's discretion under Rule 24(b) is broad.'"  *Id.* (quoting *Restor-A-Dent Dental Labs, Inc. v. Certified Alloy Prods., Inc.*, 725 F.2d 871, 876 (2d Cir. 1984)).  "The 'principal consideration' for permissive intervention is 'whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.'"  *City of Syracuse v. Bureau of Alcohol, Tobacco, Firearms and Explosives*, 2021 WL 1051625, at *8 (S.D.N.Y. Mar. 19, 2021) (quoting *Battle v. City of New York*, 2012 WL 112242, at *6 (S.D.N.Y. Jan. 12, 2012)).

The Court denies the request that J.F. and his parents be allowed to intervene in this action.  Although the claims of J.F. and his parents may allow the Court to address the merits question posed in the instant lawsuit, adding the claims of J.F. would unduly prejudice Defendant and delay the adjudication of the rights of the original parties.  This action has been pending since December of 2021.  Dkt. No. 1.  The parties have already fully briefed and argued their cross-motions for summary judgment, which the Court has now addressed.  *See United States v. Yonkers Bd. of Educ.*, 801 F.2d 593, 596 (2d Cir. 1986) ("Post-judgment intervention[] is generally disfavored because it usually creates delay and prejudice to existing parties.").  The Court has also previously allowed two other students and their parents to intervene in this action. Dkt. No. 48.  Plaintiffs provide no reason for why J.F. and his parents could not have sought to intervene at that time and do not detail any other unusual circumstances militating against a finding of untimeliness.  "Thus, the Court finds that permitting intervention at this late hour not only 'creates delay and prejudice' to [Defendant] but also 'undermines the orderly administration of justice.'"  *Glob. Auto, Inc. v. Hitrinov*, 2021 WL 1220712, at *9 (E.D.N.Y. Mar. 31, 2021) (quoting *Yonkers Bd. of Educ.*, 801 F.2d at 596).  The request for intervention is denied.

## CONCLUSION

For the reasons discussed, the motions for summary judgment are DENIED as moot. Plaintiff's request to add another plaintiff-intervenor to the case is DENIED. The Clerk of Court is directed to terminate all pending motions and to close the case.

        SO ORDERED.

Dated: March 6, 2023
      New York, New York
                                      LEWIS J. LIMAN
                            United States District Judge